Bryon Benevento (5254)
DORSEY & WHITNEY LLP
111 S. Main St., Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
Facsimile:  (801) 933-7373
benevento.bryon@dorsey.com

Blake Davis (*pro hac vice* pending)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

David A. Zucker (*pro hac vice* pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

*Attorneys for Defendants Ideanomics, Inc. and
Wireless Advanced Vehicle Electrification, LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WITRICITY CORPORATION,<br><br>                   PLAINTIFF,<br>  v.<br><br>IDEANOMICS, INC. and<br>WIRELESS ADVANCED VEHICLE<br>ELECTRIFICATION, LLC,<br><br>                DEFENDANTS. | **DEFENDANTS' MOTION TO DIMISS UNDER RULE 12(b)(6)**<br><br>Case No. 2:24-cv-00695-HCN-DAO<br><br>Judge: Howard C. Nielsen Jr.<br>Magistrate Judge: Daphne A. Oberg |

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................4

     A.     WAVE's Pioneering Heavy-Duty Charging Business ...........................4

     B.     WiTricity's Barebones Patent Complaint .............................................5

III.    LEGAL STANDARDS ........................................................................................6

     A.     Motion to Dismiss for Failure to State a Claim ....................................6

     B.     Standing To Sue For Patent Infringement .............................................6

     C.     Conclusory Allegations of Patent Infringement ...................................7

     D.     The Knowledge Requirement For Indirect And Willful Infringement...................7

IV.    ARGUMENT .......................................................................................................8

     A.     Counts III, IV, and V Should Be Dismissed For Failure to Sufficiently Allege Standing................................................................................8

     B.     All Counts Should Be Dismissed For Failure To Non-Conclusorily Allege Direct Patent Infringement.......................................................10

     C.     All Claims of Indirect and Willful Infringement Should Be Dismissed For Failure to Allege Pre-Suit Knowledge..................................18

         1.     WiTricity Fails To Allege That WAVE Had Knowledge Of The '228, '021, '422, Or '790 Patents ...........................................18

         2.     WiTricity Fails To Allege That WAVE Had Knowledge of Its Infringement of Any Patent .......................................................19

     D.     WiTricity Should Not Be Granted Leave To Amend Due To Its Access to WAVE's Stolen Confidential Information .........................................20

V.      CONCLUSION..................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*,
   604 F.3d 1354 (Fed. Cir. 2010)......................................................................*passim*

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   377 U.S. 476 (1964)..............................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................*passim*

*Aspex Eyewear Inc. v. Miracle Optics, Inc.*,
   434 F.3d 1336 (Fed. Cir. 2006).............................................................................6

*Bayer Healthcare LLC v. Baxalta Inc.*,
   989 F.3d 964 (Fed. Cir. 2021)..........................................................................8, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................6, 7, 10

*BillJCo, LLC v. Apple Inc.*,
   583 F.Supp.3d 769 (W.D. Tex. 2022)..................................................................19

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ......................................................................*passim*

*CAO Grp., Inc. v. Sybron Dental Specialties, Inc.*,
   No. 2:12-CV-1062 DN-DBP, 2014 WL 119134 (D. Utah Jan. 10, 2014)..............20

*Crystal Lagoons US Corp v. Cloward H20*,
   No. 2:19-CV-00796-BSJ, 2020 WL 8473230 (D. Utah May 11, 2020)......13, 14, 17

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004)........................................................................7, 18

*Gardner v. Engenious Designs LLC*,
   No. 2:21-cv-02364-HLT-ADM, 2021 WL 5493054 (D. Kan. Nov. 22, 2021).......17

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)..........................................................................................8, 19

*Heidary v. Amazon.com, Inc.*,
   No. 2024-1580, 2024 WL 4489918 (Fed. Cir. Oct. 15, 2024).........................13, 14

*Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*,
    564 F.Supp.3d 1126 (D. Utah 2021)...................................................................6, 18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................................................6

*Mas–Hamilton Grp. v. LaGard, Inc.*,
    156 F.3d 1206 (Fed. Cir. 1998)..................................................................................7

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012)..................................................................................7

*Minter v. Prime Equipment Co.*,
    451 F.3d 1196 (10th Cir. 2006) ...............................................................................23

*Patton v. Guyer*,
    443 F.2d 79 (10th Cir. 1971) ...................................................................................23

*Prima Tek II, L.L.C. v. A-Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000)..................................................................................9

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) .................................................................................6

*Schepp v. Fremont County, Wyoming*,
    900 F.2d 1448 (10th Cir. 1990) ...............................................................................20

*SIPCO, LLC v. Jasco Prods. Co. LLC*,
    No. 19-cv-00709-PRW, 2022 WL 610192 (W.D. Ok. Mar. 1, 2022) ...............17, 18

*Skipprint, LLC v. Rastar, Inc.*,
    No. 2:13-CV-00039, 2013 WL 4430873 (D. Utah Aug. 16, 2013).........................19

*Technology in Ariscale, LLC v. Razer USA, Ltd.*,
    703 F. Supp.3d 1153 (C.D. Cal. 2023) ...............................................................17, 18

*Tex. Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996)....................................................................................7

*Warming Trends, LLC v. Flame DesignZ, LLC*,
    No. 22-cv-00252-PAB-STV, 2023 WL 196288 (D. Col. Jan. 17, 2023) ...........17, 18

*Waterman v. Mackenzie*,
    138 U.S. 252 (1891)....................................................................................................9

*Wireless Advanced Vehicle Electrification, LLC v. WiTricity Corp. et al*,
    2:24-cv-00577-RJS (D. Utah) ...................................................................1, 3, 4, 21

*WiTricity Corp. v. Ideanomics, Inc.*,
    1:24-cv-000895-JLH, Dkt. 15 (D. Del. Sep. 9, 2024) ........................................................2, 20

*WiTricity Corp., Massachusetts Institute of Technology, and Auckland*
    *Uniservices Ltd. v. InductEV, Inc.*,
    No. 1:20-cv-01671-MSG (D. Del. filed Dec. 9, 2020) ...........................................................9

## STATUTES

35 U.S.C.
    § 271(a) ..............................................................................................................................7
    § 271(b) ..............................................................................................................................7
    § 271(c) ..............................................................................................................................7

## RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 2, 6

Defendants Ideanomics, Inc. and Wireless Advanced Vehicle Electrification, LLC (collectively, "WAVE") move to dismiss all counts of the patent infringement complaint filed against them by WiTricity Corp. under Federal Rule of Civil Procedure 12(b)(6). Dismissal is warranted because (i) in Counts III, IV, and V, WiTricity fails to demonstrate standing to assert three of the patents in this case, which it admittedly does not own; (ii) in Counts I-V, WiTricity's conclusory and boilerplate allegations fail to recite a plausible claim of infringement for any asserted patent; and (iii) in Counts I-V, WiTricity fails to sufficiently allege pre-suit knowledge of any asserted patent, which is a required element of indirect or willful infringement.

## I.   INTRODUCTION

This lawsuit is just the latest step in Plaintiff WiTricity's meritless and illegal attempt to disrupt WAVE's operations and force it out of business. Between July 29 and July 31, 2024, WAVE was raided by WiTricity in a premeditated, three-part attack. First, WiTricity took 12 of WAVE's 16 employees, including its entire engineering staff, leaving WAVE gutted. Second, at WiTricity's direction, the 12 employees took WAVE's confidential and trade secret information and gave that information to WiTricity and its counsel of record in this action. Third, WiTricity filed a meritless patent infringement lawsuit against WAVE in the United States District Court for the District of Delaware.

The first two parts of WiTricity's attack are being addressed in a separate action, *Wireless Advanced Vehicle Electrification, LLC v. WiTricity Corp. et al*, 2:24-cv-00577-RJS (D. Utah), where the court granted WAVE's request for a temporary restraining order and preliminary injunction against WiTricity's plans.

This lawsuit is an extension of the third prong of WiTricity's scheme. After originally filing its patent infringement case in Delaware, the Delaware Court dismissed the complaint in its entirety due to WiTricity's "failure to comply with the Local Rule[s,] unnecessarily wast[ing]

numerous judicial resources." *WiTricity Corp. v. Ideanomics, Inc.*, 1:24-cv-000895-JLH, Dkt. 15 (D. Del. Sep. 9, 2024).  Rather than amend its complaint to comply with the local rules, WiTricity jumped to Utah and filed an identical complaint in this Court, alleging infringement of the same five patents: U.S. Patent Nos. 9,843,228 (the "'228 Patent"); 9,184,595 (the "'595 Patent"); 8,400,021 (the "'021 Patent); 9,450,422 (the "'422 Patent"); and 10,141,790 (the "'790 Patent).

Consistent with its pattern of behavior to date, WiTricity's slapdash complaint appears to have been thrown together primarily to distract from WiTricity's illicit attempt to steal WAVE's market leading technology and exert financial pressure on WAVE, and not to pursue any legitimate legal claim.  Not surprisingly, then, it fails to meet the pleading standards of Federal Rule of Civil Procedure 12(b)(6) and should be dismissed, for three reasons.

*First*, Counts III, IV, and V of the Complaint should be dismissed because WiTricity fails to demonstrate standing to assert the '021, '422, or '790 patents.  WiTricity concedes that it does not own these patents, alleging only that it is the "exclusive licensee" of each.  D.I. 2 ("Compl.") at ¶¶ 15-17.  But as a matter of law, a bare allegation of being an exclusive licensee is "not in itself sufficient" to provide "standing to sue." *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1358-59 (Fed. Cir. 2010).  WiTricity makes no other relevant allegations.  Thus, WiTricity has not met its burden to demonstrate standing, and the Court should dismiss Counts III, IV, and V of the Complaint.

*Second*, Counts I-V of WiTricity's Complaint should be dismissed because they fail to state a plausible claim for direct infringement.  "A plaintiff cannot assert a plausible claim for infringement … by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  But that is exactly what WiTricity's complaint does.  For each asserted patent, WiTricity's direct

infringement allegations follow the same three-paragraph pattern that (1) repeats the claim language of claim 1 of each patent, (2) asserts without further explanation that WAVE's product practices that claim, and (3) reproduces a single marketing graphic (which does not even show the actual accused product) from WAVE's website. These boilerplate allegations cannot "give rise to a reasonable inference" that WAVE's product infringes, which requires the Court to dismiss all Counts of the Complaint. *Bot M8*, 4 F.4th at 1356.

**Third**, even if WiTricity had sufficiently alleged direct infringement (it hasn't), Counts I-V should be dismissed in part because WiTricity's claims for indirect and willful infringement of each asserted patent fail to allege that WAVE had the requisite pre-suit knowledge. Indirect and willful infringement each require that the defendant had (1) knowledge of the asserted patents; and (2) knowledge that the acts complained of constituted patent infringement. WiTricity fails to sufficiently allege that WAVE had either. WiTricity alleges only that it sent a letter to WAVE "alleging infringement of the '595 patent," which is facially deficient to allege notice of at least the '228, '021, '422, and '790 patents. As to the knowledge that any acts actually constituted infringement, WiTricity's complaint does nothing more than regurgitate the relevant legal standard, a tactic courts regularly reject. Thus, the Court should dismiss WiTricity's claims of indirect and willful infringement in Counts I-V.

For all of the above reasons, the Court should dismiss WiTricity's complaint. But the unusual facts of this case further confirm that it should do so with prejudice, and without leave to amend. WiTricity is represented by counsel from Butzel Long PC. Compl. at 27. Those same counsel have submitted declarations confirming that they "took possession of, and retained" WAVE's confidential information that was stolen by former employees as part of WiTricity's poaching efforts. *Wireless Advanced Vehicle Electrification, LLC v. WiTricity Corp. et al.*, 2:24-

cv-00577-RJS-CMR, Dkt. 55-16 ("Zajac Declaration").  That information relates to the same WAVE products that WiTricity accuses of infringement here, and may be relevant to WAVE's defenses, including non-infringement.[1]  As a result, if WiTricity were granted leave to amend its complaint, its infringement allegations would necessarily rely on the fruits of a poisoned tree—the insider information that Butzel Long and WiTricity obtained through deception, unfair dealing, and illegal conduct.  Even if a proposed amended complaint included only public information, Butzel Long and WiTricity would be able to draft the complaint with the benefit of illegally procured information.  The only way to ensure that WiTricity is not benefiting from its malfeasance, and that WAVE is not unduly prejudiced by WiTricity's access to non-public information, is to dismiss its claims without leave to amend.

## II.   FACTUAL BACKGROUND

### A.   WAVE's Pioneering Heavy-Duty Charging Business

From its headquarters in Salt Lake City, Utah, WAVE has built its business as an innovative market-leading developer and manufacturer of high-power wireless charging systems for the heavy-duty electric vehicle market.  WAVE has spent over $100 million and thousands of hours since its inception conducting extensive research and development to develop and refine its market leading technology.

WiTricity, whose business has so far focused on light duty automotive charging, has been trying for years to break into the heavy-duty EV market.  WiTricity has made several attempts to acquire WAVE, all of which were rejected due to WiTricity's failure to negotiate reasonable terms or offer a prevailing market rate.  Unable to acquire WAVE on the open market, WiTricity resorted

---

[1] Even more concerningly, WiTricity's counsel "purged" and "deleted" certain WAVE information.  Zajac Declaration at 3-4.  Should this case continue, WAVE reserves all rights to pursue remedies for this misconduct, including disqualification of WiTricity's counsel.

to poaching its employees, conspiring to steal its technology, and filing meritless lawsuits like this one.

**B.      WiTricity's Barebones Patent Complaint**

WiTricity's Complaint asserts that WAVE's "wireless charging systems" infringe five patents.  Relevant to this motion, WiTricity admits that it does not own the '021, '422, or '790 patents.  Rather, "Massachusetts Institute of Technology is the owner by assignment" of each, and WiTricity alleges only that it is "the exclusive licensee."  Compl. ¶15-17.

Each asserted patent relates to wireless charging and recites different complex mathematical formulas describing the electromagnetic characteristics of a wireless charging system.  The '228 patent, for example, is entitled "Impedance Matching in Wireless Power Systems" and its claim 1 requires defining a "resonant frequency $\omega_1$," an "intrinsic loss rate $\Gamma_1$," "inductance $L_1$," and "first Q factor $Q_1 = \omega_1 L_1 / R_{1ohm} + R_{1rad}$," where "$R_{1ohm}$ is the ohmic component of resistance in the first electromagnetic resonator and $R_{1rad}$ is the radiative component of resistance in the first resonator." D.I. 2-1 ('021 patent) at Cover, cl. 1.

Although the five asserted patents have different titles, different inventors, different owners, and are directed to different claimed inventions, WiTricity relies on the same boilerplate allegations for each.  For each patent, WiTricity uses the same formulaic pattern:  (i) conclusorily assert that WAVE directly infringes; (ii) recite the language of the patent claim verbatim; and (iii) insert a marketing graphic from WAVE's website (the same graphic for each patent) as a supposed "emblematic example of" the claimed invention.  *See, e.g.,* Compl. ¶¶ 22-24, 34-36, 46-48, 58-60, 70-72.  Other than inserting the relevant patent number and patent claim language, WiTricity's formulaic allegations are word-for-word identical for each of the five patents, offering no specifics as to why WAVE supposedly infringes any patent claim.  *See* Compl. 22-80.

For each patent, WiTricity then alleges that WAVE "indirectly infringe[s]," but offers no

factual allegations to support this.  It merely repeats, for each patent, identical paragraphs reciting the legal standards for induced, contributory, and willful infringement, and conclusorily asserts "upon information and belief" that WAVE meets those standards.  Compl. ¶¶ 26-33, 38-45, 50-57, 62-69, 74-80.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), the factual allegations pled must "plausibly suggest[] (not merely [be] consistent with)" the conduct required to establish the cause of action.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Thus, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim that is "supported only by labels and conclusions, a formulaic recitation of the elements, or naked assertions devoid of further factual enhancement is deficient and subject to dismissal."  *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, 564 F.Supp.3d 1126, 1133 (D. Utah 2021) (citing *Iqbal*, 556 U.S. at 679).  "[T]he burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted).

### B.   Standing To Sue For Patent Infringement

The plaintiff "bears the burden of establishing" standing "at [each] successive stage of the litigation," including "[a]t the pleading stage."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A mere "licensee" of a patent "normally does not have standing to sue without joinder of the patentee." *Aspex Eyewear Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006). The fact that a party holds an exclusive license "is necessary, but not in itself sufficient, to find that [a] licensee has standing to sue." *Alfred E. Mann*, 604 F.3d at 1360.  An exclusive licensee

"has sole standing to sue" only if the license "transfers 'all substantial rights' in the patents" such that "the license is tantamount to an assignment of the patents." *Id.* at 1359.

### C.      Conclusory Allegations of Patent Infringement

Direct patent infringement under 35 U.S.C. § 271(a) requires a showing that the accused device "contain[s] every limitation of the asserted claim."  *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1563 (Fed. Cir. 1996).  "If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas–Hamilton Grp. v. LaGard, Inc*., 156 F.3d 1206, 1211 (Fed. Cir. 1998) (citations omitted).

To survive a motion to dismiss, a complaint for patent infringement must show "more than a sheer possibility" that a defendant has infringed under this standard.  *Bot M8*, 4 F.4th at 1352.  A plaintiff "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Id.* at 1353.  Rather, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claims."  *Id.*  The level of detail required to be pled increases based on "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.*

### D.      The Knowledge Requirement For Indirect And Willful Infringement

"Indirect" patent infringement comes in two forms: "inducement to infringe or contributory infringement."  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004); *see* 35 U.S.C. § 271(b)-(c).   To state a plausible claim for induced infringement under 35 U.S.C. § 271(b), "the accused infringer must have knowingly and intentionally induced another party's direct infringement." *Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283, 1304 (Fed. Cir. 2012).  Similarly, a plausible claim for contributory infringement under 35 U.S.C. § 271(c) "require[s] a

showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964). Thus, each form of indirect infringement requires both "knowledge of the existence of the patent that is infringed," and "knowledge that the induced [or contributed-to] acts constitute patent infringement" at the time of the alleged infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011).

Claims for willful infringement under 35 U.S.C. § 284 impose a similar requirement: "[k]nowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021).

## IV.   ARGUMENT

WiTricity's Complaint should be dismissed for three reasons. *First*, WiTricity fails to allege that it has standing to sue for infringement of the '021, '422, or '790 patents. *Second*, WiTricity's allegations of direct infringement are insufficient to state a claim for infringement under the *Twombly/Iqbal* standard. *Third*, WiTricity's boilerplate allegations of indirect and willful infringement are independently deficient.

The Court should also deny WiTricity leave to amend its complaint because WiTricity's counsel have impermissibly accessed confidential WAVE information stolen by former employees. Allowing WiTricity and its counsel to draft an amended complaint with the benefit of that illicitly obtained knowledge would unduly prejudice WAVE, and improperly allow WiTricity to benefit from its misconduct.

### A.   Counts III, IV, and V Should Be Dismissed For Failure to Sufficiently Allege Standing

Counts III, IV, and V of WiTricity's complaint, which assert infringement of the '021,

'422, and '790 patents, should be dismissed because WiTricity has failed to allege facts sufficient to demonstrate standing to assert these patents. WiTricity admits that Massachusetts Institute of Technology ("MIT")—not WiTricity—"is the owner by assignment" of each of these patents. Compl. ¶¶ 15-17. WiTricity alleges only that it "is the exclusive licensee" of each patent. *Id.* Even taking that allegation as true, WiTricity lacks standing to assert these patents as a matter of law.

For more than 100 years, it has been black letter patent law that "a mere license giv[es] the licensee no title in the patent and no right to sue at law in his own name for an infringement." *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891). "Although an exclusive licensee may have standing to *participate* in a patent infringement suit," it generally "must still be joined in suit by the patent owner" to satisfy standing requirements. *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000) (emphasis added).[2] In this case, MIT—the owner of the '021, '422, and '790 patents—has *not* joined this suit. Thus, WiTricity has no standing to bring suit on those patents.

The only exception to this rule is not applicable to WiTricity. WiTricity could only bring suit *without* MIT on the '021, '422 and '790 patents if MIT had "transfer[red] 'all substantial rights' in the patents" to WiTricity, "under such terms that the license is tantamount to an assignment of the patents to the exclusive licensee." *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010). But WiTricity does not allege that it holds all substantial rights to the '021, '422, or '790 patents. Nor does it allege that its license is tantamount to an assignment. To the contrary, it expressly identifies MIT as "the owner

---

[2] WiTricity is well aware of this rule: in its prior patent suits, when it asserted patents that were owned by and purportedly licensed from universities, it included those universities as necessary co-plaintiffs. *See, e.g., WiTricity Corp., Massachusetts Institute of Technology, and Auckland Uniservices Ltd. v. InductEV, Inc.*, No. 1:20-cv-01671-MSG (D. Del. filed Dec. 9, 2020).

by assignment" of these patents.  Compl. ¶¶ 15-17.  At most, WiTricity asserts that that it is the "exclusive licensee" (*id.*), which is not enough: the fact "that [a] license was exclusive is necessary, but not in itself sufficient, to find that [a] licensee has standing to sue."  *Alfred E. Mann*, 604 F.3d 1354 at 1360.  Once a license is established to be exclusive, the question of whether that exclusive license is tantamount to an assignment turns on, among other factors, the licensee's rights "to make, use, and sell products or services under the patent"; "the scope of the licensee's right to sublicense"; "the nature of license provisions regarding the reversion of rights to the licensor;" "the right of the licensor to receive a portion of the recovery in infringement suits," "the duration of the license"; "the ability of the licensor to supervise and control the licensee's activities"; "the obligation of the licensor to continue paying patent maintenance fees," and "the nature of any limits on the licensee's right to assign its interests in the patent."  *Id.* at 1360-61.  WiTricity does not allege that it holds *any* of these rights.  In fact, it makes no allegations at all regarding its supposed standing, other than the legally insufficient statement that it is an "exclusive licensee." *See* Compl. ¶¶ 15-17.  Accordingly, WiTricity has failed to meet its burden to demonstrate standing, and the Court should dismiss Counts III, IV, and V.

**B.  All Counts Should Be Dismissed For Failure To Non-Conclusorily Allege Direct Patent Infringement**

Separate and apart from its failure to prove standing, all counts of WiTricity's Complaint should be dismissed for failure to plausibly allege direct patent infringement under the *Twombly/Iqbal* standard.  For each of the five asserted patents, WiTricity's complaint follows the same formulaic pattern, nearly verbatim:  a conclusory assertion that WAVE infringes, a quotation of the claim language, and then an assertion that a marketing graphic from WAVE's website is "emblematic" of that claim language.  Such "formulaic recitation" of a claim is insufficient as a matter of law.  *Twombly*, 550 U.S. at 545.  WiTricity's complaint does exactly what the Federal

Circuit has held to be insufficient to plead patent infringement: "recit[e] the claim elements and merely conclud[e] that the accused product has those elements," without any "factual allegations that, when taken as true, articulate *why it is plausible* that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1352-53 (emphasis added).

WiTricity's allegations regarding WAVE's supposed direct infringement repeat the same boilerplate three-paragraph pattern for each patent.  Taking the '422 patent as an example, first, Paragraph 58 recites the legal conclusion that "[u]pon information and belief, Defendants have infringed and continue to infringe one or more claims of the '422 patent" through its "making, using, offering to sell, and/or selling" of WAVE's accused products.  Compl. ¶ 58.  Such conclusory statements are not entitled to any weight during the motion to dismiss analysis. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Second, Paragraph 59 merely repeats the elements of claim 1 of the '422 patent and asserts without further explanation that WAVE's accused product has those elements.  Compl. ¶ 59.  For example, claim 1 of the '422 patent begins with:

> **1.** A wireless power system comprising:
> a source resonator and a power supply coupled to the source resonator to provide power to the source resonator, the source resonator having a resonant frequency $\omega_1$, an intrinsic loss rate $\Gamma_1$, and an intrinsic quality factor $Q_1 = \omega_1/(2\Gamma_1)$, the source resonator comprising at least one loop of conductive material; and

D.I. 2-4 at 38.  Paragraph 59 repeats these elements verbatim, merely inserting mention of WAVE's products:

> As *a wireless power system*, the "WAVE by Ideanomics" wireless charging system directly infringes …  because it includes *a source resonator and a power supply*

> *coupled to the source resonator to provide power to the source resonator*. The *source resonator* of the "WAVE by Ideanomics" wireless charging system *has a resonant frequency ω1, an intrinsic loss rate Γ1, and an intrinsic quality factor Q1=ω1/(2Γ1)*. The *source resonator* also includes *at least one loop of conductive material*…

Compl. ¶ 59 (italics added to indicate quotes from the claim language). No part of Paragraph 59 contains anything other than a word-for-word recitation of the claim elements of the '422 patent, and a conclusory assertion that these elements are present in WAVE's accused product. As a matter of law, that is insufficient to survive a motion to dismiss: "a plaintiff cannot assert a plausible claim for infringement under the *Twombly/Iqbal* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8*, 4 F.4th at 1353.

Third, Paragraph 60 contains a single sentence that purports to connect WAVE's accused product to the claims of the '422 patent, alleging that WAVE's system "is an emblematic example of the system of transferring electromagnetic energy recited in claim 1 of the '422 Patent, as evidenced in the photo below," and again repeating the claim language. Compl. ¶ 60. The photo in question, reproduced below, is a marketing illustration taken from WAVE's website that shows an image of a bus, a "Vehicle Pad," "Charging Pad," and unspecified "power electronics."



Compl. ¶ 60. This too fails to meet WiTricity's burden to "articulate *why it is plausible* that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1353 (emphasis added). Nothing

in this figure, for example, shows or refers to the required claim elements of a "source resonator," a "loop of conductive material," "a resonant frequency $\omega_1$" an intrinsic loss rate $\Gamma_1$" or "intrinsic quality factor $Q_1 = \omega_1/(2\Gamma_1)$." Nor does WiTricity allege how or why this figure supposedly shows those elements, let alone the more complex additional elements of claim 1 such as an intrinsic loss rate satisfying $\kappa \sqrt{\Gamma_1 \Gamma_2} > 1$ or a work drainage rate configured such that $\Gamma_w = \Gamma_2 \sqrt{1 + wp(\kappa^2/\Gamma_1\Gamma_2)}$. *See* D.I. 2-4 at 38 (detailing required elements of claim 1).

The marketing illustration—which is the only allegation WiTricity makes regarding how or why WAVE's product supposedly infringes—is wholly silent on the presence of these elements, and WiTricity does not allege or explain how they are present. As a result, WiTricity's allegations fail to state a claim for patent infringement and must be dismissed. *See, e.g. Heidary v. Amazon.com, Inc.*, No. 2024-1580, 2024 WL 4489918, at *4-5 (Fed. Cir. Oct. 15, 2024) (affirming dismissal of patent infringement complaint that included "a screenshot depicting one of the accused products" where the screenshot does not "account for[]" numerous limitations of the patent claim, and "neither the screenshot nor Heidary's complaint provides any reason to plausibly conclude that the accused products [infringe]"); *Crystal Lagoons US Corp v. Cloward H20*, No. 2:19-CV-00796-BSJ, 2020 WL 8473230, at *1 (D. Utah May 11, 2020) (dismissing complaint for patent infringement where claim required "walls covered with a plastic liner," but plaintiff's allegations relied on photographs of accused device that did not actually show a plastic liner)

At bottom, Paragraph 60 amounts to nothing more than an allegation that WAVE's system uses buses and electronics. That cannot meet WiTricity's burden to show "more than a sheer possibility" that WAVE's system infringes claim 1 of the '422 patent, and offers no "factual allegations" that would raise WiTricity's claims "above the speculative level." *Bot M8*, 4 F.4th at 1352-1353. This is especially true given the "complexity of the technology" in the mathematical

equations of WiTricity's claims, which require more detailed factual allegations than simple technologies. *Id.* at 1353.

WiTricity's allegations for the remaining four patents are similarly deficient, as detailed below, because each follows the same three-paragraph pattern discussed above. Compl. ¶¶ 22-24 ('228 patent), 34-36 ('595 patent), 46-48 ('021 patent), 70-72 ('790 Patent). Indeed, WiTricity's allegations for each patent are *identical* other than updating the patent number and patent claim language. In each case, WiTricity fails to allege or explain how the WAVE marketing illustration (the only factual allegation it makes regarding the accused products) plausibly supports an allegation of infringement, given that numerous claim limitations are not reflected in that image.

Count I alleges infringement based on claim 1 of the '228 patent, which requires *inter alia* "a first capacitor connected in series with the first inductive element to form a first circuit pathway; a second capacitor connected in parallel to the first circuit pathway to form a second circuit pathway; and a second inductive element connected in series with the first and second circuit pathways." D.I. 2-1 at 124. But WiTricity does not allege that any part of the marketing image shows capacitors, inductive elements, or circuit pathways, let alone where such circuit elements are "connected" in the specific arrangement of the claim. *See* Compl. ¶ 24. That is fatal. *Heidary*, 2024 WL 4489918, at *4 (affirming motion to dismiss where "the complaint and screenshot … do not plausibly convey that the accused products possess the functionality of the … limitations of claim 1"); *Crystal Lagoons,* 2020 WL 8473230, at *1.

Count II alleges infringement based on claim 1 of the '595 patent, which requires *inter alia* a system including "a layer of non-lossy material that surrounds the source magnetic resonator to form a keep-out zone" such that "a perturbed quality factor $Q_{perturbed}$ … is at least 50% of the unperturbed source quality factor." D.I. 2-2 at 147-148. Again, WiTricity does not even allege

14

that, or how, any part of the marketing image shows a layer of non-lossy material, a keep-out zone, or the specific required $Q_{perturbed}$, nor does WiTricity make any other factual allegations to support that WAVE's system has these elements. *See* Compl. ¶ 36.

Count III asserts claim 1 of the '021 patent, which requires specific mathematical relationships of resonators, including "$\sqrt{Q_1 Q_2} > 100, R_{1ohm} > R_{1rad},$ and $R_{2ohm} > R_{2rad}$. D.I. 2-3 at 20. WiTricity again reproduces the same marketing graphic, yet that graphic does not identify any component as a resonator, and does not refer to anything as "Q" "$R_1$," or "$R_2$," let alone any specific numeric values for any component that is disclosed. *See* Compl. ¶ 48. Nor does WiTricity allege that any portion of the marketing graphic meets these claim limitations. Accordingly, there are no factual allegations by which the Court could infer these claim limitations are present, nor does WiTricity make any factual allegations regarding why it is plausible that WAVE's accused products meet them.

Finally, Count V asserts claim 1 of the '790 patent, which requires both an "intrinsic loss rate satisfy[ing] $\kappa \sqrt{\Gamma_1 \Gamma_2} > 5$" and "the characteristic size of the source resonator is not more than 100/30 times the characteristic size of the device resonator." D.I. 2-5 at 26. Again, the only allegation from WiTricity is that WAVE's marketing graphic is "emblematic" of these elements. *See* Compl. ¶ 72/ And again, WiTricity does not allege that, or how, any portion of the marketing graphic shows an intrinsic loss rate, a source resonator, or a device resonator, let alone the characteristic sizes of those two resonators. *Id.* WiTricity thus fails to provide any factual allegations explaining why it is plausible—as opposed to merely speculative—that WAVE's accused product has these necessary features of its patent claims. Thus, WiTricity's complaint does not "allow[] the court to draw the reasonable inference that" any claim is infringed, and must be dismissed. *Iqbal*, 556 U.S. at 663.

A comparison with the allegations in previously-rejected complaints confirms that WiTricity's infringement allegations are deficient.  In *Bot M8*, the plaintiff alleged infringement of a patent claim that required "gaming information including a mutual authentication program on the same memory."  4 F.4th at 1354.  The complaint included "fourteen pages of factual allegations" and "fifteen pages of claim charts applying the publicly available evidence for the claim elements," including allegations that the accused product "contains multiple storage media and multiple authentication programs."  *Id.* at 1353-55.  Nonetheless, the district court dismissed the complaint, and the Federal Circuit affirmed that decision, because plaintiff's allegations were "conclusory, merely track[ed] the claim language, and d[id] not plausibly allege" that the specific limitations of the patent claims were met.  *Id.* at 1354-1355.

WiTricity's case here is considerably weaker than the complaint dismissed in *Bot M8*.  Far from the fourteen pages of allegations and fifteen pages of claim charts in that case, WiTricity here presents no claim charts at all, and just three paragraphs of conclusory infringement allegations for each patent (only one sentence of which is directed to the supposed functionality of WAVE's products).  And as described above, WiTricity's only relevant allegation—that a marketing graphic shows WAVE's system to be "emblematic" of the patent claim language—is conclusory and fails to plausibly allege that any claim of any asserted patent is infringed.  *Supra* at 12-15.  And while WiTricity's claims are deficient for any single patent, the fact that WiTricity relies on the exact same graphic, without elaboration or alteration, for five patents shows that WiTricity's suit is exceptionally meritless. At minimum, WiTricity's allegations do not "articulate why it is plausible that the accused product infringes the patent claim," and therefore must be dismissed.  *Id.* at 1353-55.

Following the Federal Circuit's guidance in *Bot M8*, district courts within the Tenth Circuit

and around the country have repeatedly held that "bare-bones allegations" and "conclusory statements that fail to indicate *how* either Defendant or its products directly or indirectly infringe" are not sufficient to state a claim for patent infringement. *Gardner v. Engenious Designs LLC*, No. 2:21-cv-02364-HLT-ADM, 2021 WL 5493054, at *2 (D. Kan. Nov. 22, 2021) (emphasis added); *see also, e.g. Crystal Lagoons*, 2020 WL 8473230, at *1-2 (complaint that "recites the elements of the patent and includes photographs of the accused structure" was dismissed where it failed to "allege factual support for the conclusory statement" that all elements of the patent claim were present in the accused structure); *SIPCO, LLC v. Jasco Prods. Co. LLC*, No. 19-cv-00709-PRW, 2022 WL 610192, at *3 (W.D. Ok. Mar. 1, 2022) (patent complaint "fails to meet pleading standards" where it merely "reiterate[s] the .. claim limitations" and then "presents an array of disorganized figures and assertions describing general features of the accused products"); *Technology in Ariscale, LLC v. Razer USA, Ltd.*, 703 F. Supp.3d 1153, 1160 (C.D. Cal. 2023) (dismissing complaint that "does not explain the structure or operation of any of th[e] accused products and does not explain how any accused product meets any claim limitation"). That is particularly true where, as here, "the only link between" the asserted patents and the accused products in the Complaint "is Plaintiffs' conclusory assertion that the products fall within the scope of the patent." *Gardner*, 2021 WL 5493054, at *2*; see also Warming Trends, LLC v. Flame DesignZ, LLC*, No. 22-cv-00252-PAB-STV, 2023 WL 196288, at *7 (D. Col. Jan. 17, 2023) (complaint that "recites verbatim the elements of claim 1" and "contains no other factual allegations describing the Accused Instrumentalities or how those products infringe on the patent claim" fails to state a claim for patent infringement).

WiTricity's threadbare complaint is no different than those at issue in *Bot M8*, *Gardner*, *Crystal Lagoons*, *SIPCO*, Technology *in Ariscale*, or *Warming Trends*, and should be dismissed

in its entirety for failure to plausibly allege infringement of any asserted patent.

### C. All Claims of Indirect and Willful Infringement Should Be Dismissed For Failure to Allege Pre-Suit Knowledge

Because WiTricity's Complaint fails to state a plausible claim for direct infringement, there can be no indirect or willful infringement as a matter of law. *See Dynacore*, 363 F.3d at 1272. Therefore, all allegations of direct, indirect, and willful infringement should be dismissed.

Independently, WiTricity's allegations of indirect and willful infringement are separately deficient and must be dismissed because they fail to sufficiently allege that WAVE had pre-suit (i) knowledge of the asserted patents; or (ii) knowledge of its supposed infringement of those patents.

### 1. WiTricity Fails To Allege That WAVE Had Knowledge Of The '228, '021, '422, Or '790 Patents

WiTricity asserts that WAVE "ha[s] been on notice of infringement … since as early as December 16, 2020, when WiTricity sent a letter to WAVE, alleging infringement of the '595 Patent." Compl. ¶¶ 25, 37, 49, 61, 73. Of the five asserted patents, WiTricity only alleges that the '595 patent is mentioned in this letter. *See id.* Thus, WiTricity's allegations on their face fail to plausibly allege that WAVE had pre-suit knowledge of the '228, '021, '422, or '790 patents.

In an attempt to cover this hole in its argument, WiTricity claims that its letter "reference[d] the other Asserted Patents," but its complaint demonstrates that this is not the case. The supposed "reference" to the '228, '021, '422, or '790 patents does not actually mention those patents, but rather is a boilerplate statement that WiTricity "anticipate[d] discovering additional instances of infringement by WAVE." Compl. ¶¶ 25, 37, 49, 61, 73. Courts have repeatedly rejected such efforts to bootstrap documents that mention one asserted patent into alleged notice of other, nonmentioned, patents. *See Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, 564 F. Supp. 3d 1126, 1141 (D. Utah 2021) (plaintiff's claim that defendant "had pre-filing knowledge of *all* of the Asserted Patents" based on document that cited only *some* of the Asserted Patents was

"too speculative to be deemed plausible"); *BillJCo, LLC v. Apple Inc.*, 583 F.Supp.3d 769, 776 (W.D. Tex. 2022) (rejecting contention that "notice of one patent in a portfolio or large family constitutes constructive notice of every other patent in that portfolio or family").

WiTricity makes no other allegations regarding WAVE's supposed pre-suit knowledge of the '228, '021, '422, or '790 patents, and has therefore failed to plausibly allege that such knowledge existed.  In the absence of such knowledge, WiTricity's claims for indirect and willful infringement must be dismissed.  *See Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 765-66 (2011) (indirect infringement requires knowledge of the asserted patent and evidence of infringement at the time of supposed infringement); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) (same for willfulness).

### 2.    WiTricity Fails To Allege That WAVE Had Knowledge of Its Infringement of Any Patent

Alleging "[m]ere knowledge of the Asserted Patents is not enough" to sufficiently plead pre-suit willful or indirect infringement.  *BillJCo*, 583 F.Supp.3d at 777.  Rather, WiTricity must have also alleged that WAVE had "knowledge of its infringement," including of "how [WAVE] allegedly infringed."  *Id.*  WiTricity's complaint fails to allege that WAVE had knowledge of its supposed infringement, for any of the five patents, because it relies on identical boilerplate paragraphs that merely recite the legal standards for induced, contributory, and willful infringement, and conclusorily asserts "upon information and belief" that WAVE meets those standards.  Compl. ¶¶ 26-33, 38-45, 50-57, 62-69, 74-80.  As a matter of law, identical passages that merely recite the legal standard are insufficient to state a claim for indirect or willful infringement.  *See, e.g., Skipprint, LLC v. Rastar, Inc.,* No. 2:13-CV-00039, 2013 WL 4430873, at *3-4 (D. Utah Aug. 16, 2013) (dismissing claims of indirect infringement that used "identical language" for multiple distinct patents because factual allegations amounted to "no more than []

conclusory statements"); *CAO Grp., Inc. v. Sybron Dental Specialties, Inc.,* No. 2:12-CV-1062

DN-DBP, 2014 WL 119134, at *2 (D. Utah Jan. 10, 2014) (dismissing indirect infringement claims

where complaint merely recited the legal standard and conclusorily asserted that defendant met

them).

Accordingly, WiTricity's claims of indirect and willful infringement as to all five asserted

patents should be dismissed for failure to adequately plead that WAVE had presuit knowledge of

the asserted patents or its supposed infringement of them.

### D.    WiTricity Should Not Be Granted Leave To Amend Due To Its Access to WAVE's Stolen Confidential Information

For the reasons stated above, all counts of WiTricity's Complaint should be dismissed.

After dismissal, the decision whether to allow an amended pleading "is generally left to the sound

discretion of the district court." *Schepp v. Fremont County, Wyoming*, 900 F.2d 1448, 1451 (10th

Cir. 1990). While Federal Rule of Civil Procedure 15(a) states that permission to amend a pleading

"shall be freely given when justice so requires," justice here requires the opposite. As detailed

below, the only way to ensure that WiTricity and its counsel do not benefit from improperly

obtained information regarding WAVE's products is to deny leave to amend, limiting WiTricity

to the allegations it drafted *before* it improperly learned WAVE's confidential and trade secret

information.

WiTricity filed its Complaint in this action on September 20, 2024. D.I. 2. That complaint

is identical to the complaint WiTricity previously filed in Delaware on July 30, 2024. *Compare*

D.I. 2. *with WiTricity Corp. v. Ideanomics, Inc. et al*., No. 1:24-cv-000895-JLH, Dkt. No. 1. Thus,

the operative allegations were drafted by WiTricity and its counsel no later than July 30, 2024.

Between July 29 and July 31, 2024, twelve of WAVE's employees, including its entire

engineering staff, abruptly announced their immediate resignations and took employment at

WiTricity, taking with them WAVE's confidential, proprietary, and trade secret information in the form of knowledge, data, and computer equipment. The details of that misconduct are at issue in *Wireless Advanced Vehicle Electrification, LLC v. WiTricity Corp. et al.*, No. 2:24-cv-00577-RJS (D. Utah) (the "*Trade Secret Action*"), but the impact on this case is apparent from the Declaration of Mitchell Zajac. *Trade Secret Action* Dkt. 55-16 ("Zajac Declaration").

Mr. Zajac is a lawyer at the firm of Butzel Long PC, and is counsel to WiTricity in this action. Zajac Declaration at Cover, ¶ 4; Compl. at 27. Between August 6 and 13, 2024, Mr. Zajac conducted "new hire interviews" with each of the former WAVE employees as part of WiTricity's plan to hire them away from WAVE. Zajac Declaration at ¶¶ 7-13. At those interviews, Mr. Zajac admittedly "took possession of, and retained all of the information copies and transfers, as well as tangible devices and equipment" belonging to WAVE, which the former WAVE employees had kept following their resignations. *Id.* ¶ 8. Mr. Zajac was helped in this effort by his partner Dan Vivarelli at Butzel Long, who is also counsel for WiTricity in this action. Zajac Declaration ¶ 10. The confidential WAVE information that Butzel Long took possession of includes, at least:

1. The WAVE work laptops of WAVE's former Head of Operations, Senior Field Technician, Technical Data Analyst, and Senior Buyer. *Trade Secret Action* Dkt. 55-9 (Stewart Declaration) at ¶¶ 3, 23, 24, 25; *Trade Secret Action* Dkt. 55-12 (Aguilar Declaration) at ¶¶ 4, 16, 21, 22; *Trade Secret Action* Dkt. 55-14 (Nordlund Declaration) at ¶¶ 4, 19, 23-25; *Trade Secret Action* Dkt. 55-15 (Espinosa Declaration) at ¶¶ 4, 21, 22.

2. More than "1600 files" spanning "250 folders," as well as an entire "computer," "external hard drive," and separate "WAVE laptop" from WAVE's former Sales Operations Manager Jory Peppelaar. *Trade Secret Action* Dkt. 55-7 (Peppelaar Declaration) at ¶¶ 4, 14-17, 28.

3.      Additional "flashdrives," "data storage devices," "test equipment," "information," "paper files," "documents," "photos," "notes," and "notepads" from those employees as well as WAVE's former Director of Systems Engineering, Test Engineer, Technical Project Manager, Mechanical Engineer, Electrical Assembly Technician, Innovations Engineering Manager, and Field Service Manager. *Trade Secret Action* Dkt. 55-3 (Ball Declaration) at ¶¶ 3, 41, 44, 45; *Trade Secret Action* Dkt. 55-4 (Eisert Declaration) at ¶¶ 4, 22, 23; *Trade Secret Action* Dkt. 55-5 (Gaddam Declaration) at ¶¶ 4, 24, 28; *Trade Secret Action* Dkt. 55-6 (Harmsen Declaration) at ¶¶ 4, 18, 22, 23; *Trade Secret Action* Dkt. 55-8 (Staples Declaration) at ¶¶ 4, 22, 23; *Trade Secret Action* Dkt. 55-10 (Zaheer Declaration) at ¶¶ 5, 29, 35, 40, 42; *Trade Secret Action* Dkt. 55-13 (Harding Declaration) at ¶¶ 8, 25, 29-31, 34-35.

Accordingly, the trove of laptops, documents, drives, and data that Mr. Zajac and Mr. Vivarelli collected, reviewed, made copies of, and took possession of contained confidential WAVE information, including information regarding the operation of the product accused in this case.[3]

That bell cannot be unrung. For three months now, Mr. Zajac and Mr. Vivarelli, as counsel to WiTricity, have had access to WAVE's confidential information. As a result, there is no way for WiTricity or Butzel Long to amend its complaint without violating the principles of "justice" that undergird Federal Rule of Civil Procedure 15(a). If the Court were to allow Butzel Long and WiTricity to amend their complaint, any amended infringement allegations would necessarily be tainted by their access to non-public information regarding the operation of WAVE's products. Even if WiTricity were to draft a complaint that cites only public documents, it still would have

---

[3] This is necessarily the case, given that the information Mr. Zajac and Mr. Vivarelli collected includes the notes, data, or complete work laptops of nearly the entirety of WAVE's work force, including those who developed the accused product.

been able to analyze those documents and prepare its complaint with the benefit of non-public knowledge, putting WiTricity in a better position now than it was when it drafted its original complaint.

Any amended complaint from WiTricity and Butzel Long would also impose undue prejudice on WAVE, by virtue of having to defend against a complaint drafted with non-public information. Such undue prejudice justifies denial of leave to amend. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006). Indeed, the presence of "[u]ndue prejudice" is the single "most important factor in deciding" whether or not to grant leave to amend the pleadings, and "typically" exists where, as here, "the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id.* (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). To avoid that prejudice, the Court should dismiss WiTricity's claims without leave to amend, thereby limiting it to the allegations it drafted *before* Mr. Zajac and Mr. Vivarelli improperly gained access to WAVE's non-public information.[4] Any other result allows WiTricity to benefit from its misconduct, and unduly prejudices WAVE.

## V.    CONCLUSION

WAVE's motion to dismiss all counts of the Complaint should be granted, without leave to amend.

---

[4] Considering the barebones allegations of infringement in the Complaint (*see supra* at 10-18), the Court would also be correct to require WiTricity's counsel prove it had a Rule 11 basis to file its original Complaint. That inquiry should include evidence demonstrating that WiTricity's infringement assertions on each of its five patents was filed "after an inquiry reasonable under the circumstances" and not meant to further "any improper purpose." Fed. R. Civ. P. 11(b).

Respectfully submitted,

DATED: November 14, 2024                              **DORSEY & WHITNEY LLP**


By: _/s/ Bryon Benevento_
Bryon Benevento (5254)
111 S. Main St., Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
Facsimile:  (801) 933-7373
benevento.bryon@dorsey.com

Blake Davis
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

David A. Zucker
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

*Attorneys for Defendants Ideanomics, Inc.
and Wireless Advanced Vehicle
Electrification, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2024, I caused the foregoing **DEFENDANTS'**

**MOTION TO DIMISS UNDER RULE 12(b)(6)** to be electronically filed with the Clerk of the

Court using CM/ECF, which will send notification of such filing to all registered counsel of record.

<u>      */s/ Jacqueline Ervin*      </u>